REGIONAL REFUSE SYSTEMS, INC.; Granger Sales, Inc.; and Daniel Dzina, Plaintiffs–Appellants (85–3855), Plaintiffs–Appellees (85–3869),

v.

INLAND RECLAMATION COMPANY; Ohio Bulk Transfer Company; Inland Refuse Transfer Inc.; Lake Erie Asphalt Products, Inc.; Kelley's Island Seaway Marina; James Palladino; Frank Palladino; Climaco, Seminatore, Lefkowitz & Kaplan Company, L.P.A.; John Climaco, Esq.; Kenneth Seminatore, Esq.; John Cartellone, Esq.; Mark Immormino, Esq.; Albert Seymour; Paul Caesar; Harry Fedele; Terry Gill; Milo Valenti; Paul Sciria; Glenwillow Land Fill, Inc.; Frank Greslik; Samuel Sarantos; John Does 1–100, Defendants–Appellees (85–3855), Defendants–Appellants (85–3869).

Nos. 85–3855, 85–3869.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 10, 1987.

Decided March 16, 1988.

Daniel A. Dzina, Seven Hills, Ohio, Deborah J. Nicastro (argued), Cleveland, Ohio, for plaintiffs-appellants in No. 85–3855.

---

Irene A. Holyk (argued), Cleveland, Ohio, for defendants-appellees in No. 85–3855.

Mark Immormino, Cleveland, Ohio, pro se.

Mark Immormino, Cleveland, Ohio, for Caesar.

John R. Climaco, Kenneth F. Seminatore, Thomas L. Colaluca, Climaco, Climaco, Seminatore & Lefkowitz Co., L.P.A., Irene A. Holyk (argued), Cleveland, Ohio, for defendants-appellants in No. 85–3869.

Deborah J. Nicastro (argued), Cleveland, Ohio, for plaintiffs-appellees in No. 85–3869.

Before MILBURN and RYAN, Circuit Judges; and EDWARDS, Senior Circuit Judge.

RYAN, Circuit Judge delivered the opinion of the court, in which MILBURN, Circuit Judge, joined. EDWARDS, Senior Circuit Judge, (p. 15) delivered a separate dissenting opinion.

RYAN, Circuit Judge.

Plaintiffs appeal the dismissal of their complaint against dozens of named and unnamed defendants under 18 U.S.C. §§ 1962 & 1964 (RICO), 15 U.S.C. § 1 (Sherman Antitrust Act), and 42 U.S.C. §§ 1981 & 1983. Some of the defendants have cross-appealed, claiming that the district court should have awarded sanctions against plaintiff Dzina and his original counsel in addition to the sanction of dismissal of the action. We affirm.

## I.

Plaintiff Dzina is the president and sole shareholder of the other two plaintiffs, Regional Refuse Systems, Inc. (Regional) and Granger Sales, Inc. Dzina filed a complaint against thirty-seven named defendants and "John Does 1–99," claiming that all of the defendants were participants in a conspiracy to monopolize the refuse disposal business in the greater Cleveland area. More specifically, the complaint alleged a conspiracy to assure that several companies solely owned by defendant James Palladino would obtain all of the City of Cleveland's refuse disposal business and to prevent Dzina from having any share in that business.

The complaint named as defendants Palladino and his companies; Palladino's brother and other employees of Palladino or one of his companies; several other companies and individuals in the refuse disposal business; various city officials, including the mayor and the city council president, who were alleged to have accepted bribes to further the conspiracy; and Palladino's attorney and various other attorneys who were alleged to have committed such acts as paying bribes and filing a groundless involuntary bankruptcy petition against Dzina.

One named defendant, an employee of Palladino, was alleged to have pistol-whipped Dzina himself. In addition, Palladino's employees were alleged to have committed five separate acts of arson which led to the destruction of a building being used by plaintiff Regional. The complaint even alleged that several newspaper reporters, also named as defendants, furthered the conspiracy by writing false or distorted news stories. The complaint alleged various additional acts in furtherance of the conspiracy, including robberies, arson, the filing of false criminal charges, intimidation of witnesses, solicitation for murder, attempted murder, and murder. The complaint sought hundreds of millions of dollars in damages.

The complaint was filed on April 29, 1983. Almost as soon as defendants had been served, the City of Cleveland and other defendants (hereinafter the "city defendants") noticed plaintiffs' depositions, naming a date two weeks hence, May 31, 1983, as the starting time for the depositions. Plaintiffs' attorney, Mr. Wuliger, asserted the existence of a scheduling conflict, and counsel agreed upon June 10 as the deposition date.

On May 24, 1983, Mr. Wuliger sent an ambitious deposition schedule to the defendants, in which he proposed to depose twenty-eight individual and corporate defendants by conducting depositions on July

6–8, July 11–15, August 1–5, August 22–26, and August 29–30. At approximately the same time, another attorney in Mr. Wuliger's office, Ms. Nicastro, informed counsel for city defendants that plaintiffs were concerned about conflicts of interest between the city and the individual city defendants. The parties failed to resolve this issue.

On June 9, the day before the agreed-upon plaintiffs' deposition date, Mr. Wuliger filed a motion for a protective order, claiming that the representation of all city defendants by the city's law department created conflicts of interest and that plaintiffs should not have to submit to deposition until these conflicts were resolved. The district court saw no merit in Mr. Wuliger's argument that subsequent decisions by individual defendants to obtain separate counsel would impose an unfair burden on plaintiffs, because the burden would be no different if the defendants obtained separate counsel before discovery began, in either case, defendants would be entitled to depose the plaintiff through their own attorneys. The district court accordingly denied the motion on the day it was filed. The suddenness of the court's ruling apparently caught Mr. Wuliger off guard. He sent Ms. Nicastro to the deposition to inform defendants that he was busy, and that both attorneys had told Dzina to go ahead with his plans to be out of town on June 10 because they had assumed that the court would never rule on the motion in time for the deposition to go forward as scheduled.

On June 13, 1983, plaintiffs filed with the court a "first set of interrogatories" which were then sent to various defendants.

On July 1, 1983, the city defendants moved for dismissal under Fed.R.Civ.P. 41(b) for failure to comply with the discovery rules or, in the alternative, for an order under Fed.R.Civ.P. 37(a) compelling plaintiffs to appear for deposition at some stated time and place on pain of dismissal for failure to appear. Without expressly granting or denying this motion, the court stayed proceedings in the case on July 1 and ordered that counsel "contact the Court with respect to scheduling a deposi-tion for plaintiff Daniel Dzina" as soon as the court could resolve defendant Seymour's motion to dismiss on res judicata grounds. Seymour's motion was denied on December 12, at which time the court ordered that the parties proceed with the scheduling of Dzina's deposition. In the same order, the court granted plaintiffs' motion to file an amended complaint, thereby activating an amended complaint originally filed on September 26.

Defendants continued to file motions to dismiss, as well as motions to reconsider the December 12 order. On March 2, 1984, the court ordered that the stay would be in effect until Dzina was deposed, and the parties continued to bicker about when the deposition could be held. Plaintiffs' counsel, Mr. Wuliger, first said he would be available the last week of February and then, after some defendants had arranged to be free on the last full week of February, announced that he had meant he was available during the week that began on February 27. Finally, on March 29, the court ordered Dzina to be available for deposition on April 9 and 11, 1984, and on as many of the following days as it would be necessary to complete the deposition.

The deposition began as scheduled on April 9, and continued on April 11–13, but it did not proceed smoothly. Dzina was a generally vague and uniformative witness. He refused to answer any questions about his own involvement in the bribing of city officials, citing his fifth amendment right against self-incrimination. He repeatedly explained his lack of information on particular factual issues by stating that an investigator, whom he would not identify and who was hired after the complaint was filed, was looking into those issues. He would not reveal to defendants the names of witnesses who did have such information, claiming that a witness named in the first day of the deposition had almost immediately been threatened by defendant Frank Palladino, so that allowing the lawyers attending the deposition to know the names of Dzina's witnesses would place those witnesses in grave danger.

Dzina also was uncooperative, taking long lunch breaks after counsel had agreed to work through lunch, appearing as much as an hour late for the morning or afternoon sessions while assembled counsels waited for him, and leaving at lunch time on April 13 and not returning, claiming illness, so that the deposition was not completed as ordered. Mr. Wuliger was an active and obstructive participant in the deposition, constantly interposing objections and observations. Dzina's failure to answer many questions, at Mr. Wuliger's urging, led to numerous calls to the court for rulings in an effort to permit meaningful questioning to continue.

After Dzina unilaterally cut short the deposition, defendants sought and obtained a court order requiring Dzina to "appear promptly" to be deposed between 9:00 a.m. and noon, and between 1:00 and 4:00 p.m. on June 13–15. The court also ordered that Dzina should submit privately to the court the names of witnesses for whose safety he had serious concern. Apparently, the June deposition was completed on schedule.

Dzina obtained an extension of time to review his deposition answers, and, in August, submitted twenty-seven proposed transcript changes. The court permitted these modifications, but concluded that they altered the deposition in such a way as to make it incomplete and requiring the defendants' counsel be given the opportunity to question the deponent about the new answers. Accordingly, on March 6, 1985, the court ordered that the deposition be reopened and completed by April 5, 1985.

Once again, the parties could not agree on a deposition date, so the court ordered the deposition to recommence on April 4. The deposition was completed as scheduled on that date.

On April 17, 1985, Mr. Wuliger moved to withdraw from the case, on the ground that "Plaintiffs have relieved counsel and plaintiffs have advised movant that new counsel will be entering an appearance." The motion was granted. Contrary to the implication of Mr. Wuliger's motion, no new counsel entered an appearance promptly, and a status call held by the district court on June 26, 1985, pursuant to notice issued on April 30, was attended by at least ten attorneys on behalf of the many defendants but by no one on behalf of plaintiffs. This procedural omission spawned a flurry of motions to dismiss for failure to prosecute, Fed.R.Civ.P. 41(b), and for failure to obey discovery orders, Fed.R. Civ.P. 37(b)(2)(C), as well as motions for summary judgment and for sanctions against Dzina and Mr. Wuliger for filing a pleading without conducting reasonable inquiry into its factual basis, Fed.R.Civ.P. 11.

Finally, on August 15, 1985, a new attorney, Mr. Kelley, entered an appearance on behalf of plaintiffs and filed pleadings in response to the various defendants' motions. Mr. Kelley also appeared at a hearing on those motions, held August 22, 1985. On this appeal, however, it is Ms. Nicastro, formerly of Mr. Wuliger's firm, who represents plaintiffs.

On September 4, 1985, the district court entered its final judgment in this case, from which plaintiffs have appealed. This judgment dismissed all claims against all defendants "as a sanction pursuant to Fed. R.Civ.P. 37(b)(2)(C)." The court also ruled provisionally on other motions.

## II.

Federal Rule of Civil Procedure 37(b)(2) permits a court to make "such orders ... as are just" with regard to a party's failure "to obey an order to provide or permit discovery, including an order made under [Rule 37(a), Motion for Order Compelling Discovery]." Examples of orders that may be just, depending upon the circumstances, are:

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

As this court has recently reaffirmed, Dismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to

cooperate in discovery is due to willfulness, bad faith, or fault.

*Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir.1985) (citations omitted). It is well-established, however, that district court dismissal orders under this rule are reviewable only for abuse of discretion. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Patterson v. Township of Grand Blanc*, 760 F.2d 686 (6th Cir.1985) (per curiam).

■ In *Patton*, this court reversed a dismissal order because the district court failed to articulate its rationale for dismissal on the record. 765 F.2d at 608. That problem does not present itself here. The district court's memorandum opinion includes an extensive and painstaking examination of the basis for its dismissal, and even set forth an example of Dzina's deposition conduct in its opinion.

Other circuits have required a showing of bad faith as opposed to *inability* to comply with a discovery order, as a condition for dismissal under Rule 37(b). In *Kotlicky v. United States Fidelity & Guar. Co.*, 817 F.2d 6 (2d Cir.1987), the court reversed the dismissal because the plaintiff presented evidence that he did not hear of the order in time to comply. In several other recent cases, dismissal has been affirmed where the ability to comply seemed apparent. In *In re Standard Metals Corp.*, 817 F.2d 625 (10th Cir.1987), the court affirmed the dismissal of a creditor's claim when the creditor was shown to have chosen to take a business trip out of the country instead of appearing for his deposition; in *United States v. Shipco Gen., Inc.*, 814 F.2d 1011 (5th Cir.1987), the court affirmed a default judgment against a defendant who twice missed a deposition appearance in violation of a court order; in *Brinkmann v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744 (5th Cir.1987), the court dismissed the case when plaintiff refused to comply with a court order for no reason except that he claimed (frivolously) that a local court rule exempted him from compliance.

In *Adkins v. United States*, 816 F.2d 1580, 1582 (Fed.Cir.1987), the court expressly held that the burden of proof is on the dismissed party to establish "that the failure to comply was due to inability, and not to willfulness, bad faith or any fault of the party." The thrust of this and the previously cited cases is to presume that, if a party has the ability to comply with a discovery order and does not, dismissal is not an abuse of discretion. The rationale for this approach appears in the Supreme Court case of *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976):

There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the District Court.

But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

The Sixth Circuit, however, has not always been as reluctant to reverse dismissals as this rationale would suggest. In *Patton*, the court reversed a dismissal for failure to articulate a rationale. 765 F.2d at 608. In *Patterson*, 760 F.2d at 688, this court reversed a dismissal, adjudging that sanction to be "extremely harsh in that it deprives a plaintiff of his day in court due to the inept actions of his counsel." *Patterson* relied upon an earlier case, *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir.1980) (per curiam), which reversed a dismissal under Rule 41(b) because, while plaintiff's counsel had been inept, "[t]he

plaintiff is blameless." In his dissent, District Judge Joiner contended that reversal was not necessary to protect the plaintiff's rights, because:

> The result of affirming the lower court here would not be to penalize the plaintiff but simply to transfer the plaintiff's claim against the defendant in this case to a claim against plaintiff's lawyer.

636 F.2d at 163 (Joiner, D.J., dissenting).

Similarly, in *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951 (4th Cir.1987), the court reversed a default judgment, over a strong dissent, because the defendants did not contribute to their attorney's dilatory conduct. The Third Circuit reversed a dismissal for the same reason in *Carter v. Albert Einstein Medical Center*, 804 F.2d 805 (3d Cir.1986).

In this case, the district court expressly found that plaintiff Dzina himself engaged in conduct that "can only be characterized as outrageous and beyond the realm of which the other parties to the action and their counsel should be made to tolerate." The court gave numerous and specific examples of Dzina's conduct—absenting himself from the deposition without explanation, evading questions, refusing to answer questions he deemed repetitive, refusing to identify persons he claimed provided information upon which his lawsuit was based, claiming vague and spurious privileges, and so forth. While this circuit has been more ready than others to reverse dismissals for disobedience to discovery orders, especially when it appears that the party is blameless, this is not a case in which a party has simply failed to appear and no one is clearly at fault except for the party's attorney.

Other factors considered relevant in reviewing dismissals under Rule 37(b)(2)(C) are: whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery, *see Lolatchy*, 816 F.2d at 952–53; whether the dismissed party was warned that failure to cooperate could lead to dismissal, *see Brinkmann*, 813 F.2d at 750; and whether less drastic sanctions were imposed or considered before dismissal was ordered, *see Founding Church of Scientology v. Webster*, 802 F.2d 1448, 1459 (D.C.Cir.1986).

There is little question here that the district court was influenced, in imposing the sanction of dismissal, by the serious and far-reaching nature of plaintiffs' complaint and the fact that Dzina's lack of cooperation during the discovery period created substantial doubts about the quality of the evidence available to prove those allegations. Certainly the many defendants were put to a great deal of expense, to little avail, in the efforts to procure Dzina's attendance at his own deposition, and to wring some substance out of his vague and evasive answers. The defendants know little more now than they did when they began about how the plaintiffs intended to prove their case, and the prejudice caused by Dzina's conduct is therefore clear.

It is also clear that plaintiffs were aware of the danger of dismissal for noncooperation, because defendants had been seeking dismissal on this basis for over a year before it was ordered, and the city defendants had invoked the availability of the Rule 37 dismissal sanction as early as July 1, 1983, in their brief in support of a Rule 41(b) motion to dismiss. In its opinion, the district court does not contemplate lesser sanctions, stating only that, in light of Dzina's "callous disregard of this Court's order that [he] subject himself to deposition by the defendants ... [o]nly the most serious sanction of dismissal is appropriate in this action." It has been held that "[t]he District Court ... enjoys authority to impose this sanction even where 'a less drastic sanction might have been entertained.'" *Webster*, 802 F.2d at 1459 (quoting *Automated Datatron Inc. v. Woodcock*, 659 F.2d 1168, 1169 (D.C.Cir.1981)).

While it would be inappropriate to dismiss without considering the severity of this sanction and the availability of lesser sanctions, it is not an abuse of discretion to dismiss, even though other sanctions might be workable, if dismissal is supportable on the facts. Dismissal is generally imposed only for egregious misconduct, such as *repeated* failure to appear for deposition, *see Technical Chemical Co. v. Ig–Lo Products*

*Corp.,* 812 F.2d 222 (5th Cir.1987), and Dzina's misconduct here, as characterized by the district court, clearly falls in this category. It is an unusual aspect of this case that Dzina did appear to be deposed, and consistently made a colorable effort to seem to be acting in good faith while in fact consistently refusing to supply relevant and unprivileged information. However, misconduct is not any less misconduct because it is executed with a veneer of good intentions.

Dzina's principal defense against this sanction is that it is authorized only when a discovery order has been disobeyed, and he never disobeyed any specific court order to, for example, answer a particular question, because the court made no such specific orders. This might be a plausible argument if Dzina had been taken by surprise by the dismissal, and if he had not long been on notice, by way of repeated court orders, of the inadequacy of his level of cooperation and the mandatory nature of his participation in the discovery process. As defendants point out, Dzina's argument implies that he would not have disobeyed the court's order that he appear for his deposition if he had appeared and flatly refused to answer any questions. The court's order implied that he must answer any question asked, unless the answer was privileged or the question objectionable. He failed to meet this obligation.

We cannot say that dismissal under Rule 37 was an abuse of discretion on this record.

### III.

Federal Rule of Civil Procedure 11 was revised, effective August 1, 1983. The amended complaint in this case was filed after that date, so the new, more stringent rule applies here. The new version of the rule has been interpreted by the Second Circuit to require that:

> [S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985) (footnote omitted, emphasis in original). *Eastway* has been followed in other circuits, though it has yet to be cited in this circuit, and has been read to "[r]emov[e] any subjective good faith component from rule 11 analysis." *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986).

The cross-appellants ask this court to impose sanctions under this rule, implying that this may be done in the first instance by the Court of Appeals because it is virtually a matter of law which the district court has effectively decided by failing to rule on their motions for sanctions in that court. There is no need, and no justification, for this court to decide the issue of Rule 11 sanctions before the trial court has expressly decided it. The district court retains jurisdiction to resolve a motion for attorneys fees or sanctions even while an appeal of the merits is pending in the court of appeals. *Thomas v. Capital Sec. Serv., Inc.,* 812 F.2d 984, 987 (5th Cir.1987). The district court remains free to address the Rule 11 motion that is now pending before it, and we will not interfere with the court's deliberation on this issue.

### IV.

Dismissal of the complaint under Rule 37(b)(2)(C) is AFFIRMED.

EDWARDS, Senior Circuit Judge, dissenting.

I would remand this case for full testimonial hearing on the question which I believe it poses, namely: "Was the garbage hauling contract with the City of Cleveland illegally impacted by Mafia threats as claimed by appellant?