972 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SOUTHSIDE COMMUNITY ACTION ASSOCIATION, INC., Carl Booth;
Roberta Booth; Getherine Cyriak; Robert A.
Martin; Sandra Martin, Plaintiffs-Appellants,
v.
GEORGIA PACIFIC CORPORATION; Columbus Health Department;
William Myers; Gregory Lashutka; Hugh Dorrian;
David Ort, Defendants-Appellees.
 No. 91-3729.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1992.
 
 Before KEITH and SUHRHEINRICH, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs, Southside Community Action Association and several individual plaintiffs, appeal the district court's dismissal of their suit against defendant Georgia-Pacific Corporation, for failure to comply with discovery deadlines mandated by the district court's scheduling order.
 
 I.
 
 2
 Defendant Georgia-Pacific Corporation operates a resin plant on Watkins Road in Columbus, Ohio. On May 7, 1984, a valve on one of the Georgia-Pacific's resin kettles ruptured, causing some vaporized resin to be released into the air. A certain amount of resin was alleged to have fallen on the properties of residents of the Southside Community. These residents, who are the plaintiffs herein, all claim to have suffered a variety of personal injuries and/or property damages as a result of this mishap. The group of plaintiffs also includes the Southside Community Action Association, which is a non-profit association made up of the residents of surrounding neighborhoods. These plaintiffs brought suit to recover damages for personal injuries and property damage allegedly suffered from exposure to toxic substances emitted from defendant's plant. The plaintiffs also sought injunctive relief.
 
 
 3
 All of the plaintiffs in this action were originally represented by Attorney H. Lee Thompson. Several of the plaintiffs, however, apparently being dissatisfied with the services of Thompson, retained the services of attorney L. Bernard LaCour in March 1989. From that point forward, the Southside Community Action Association and five individual plaintiffs,[1] became known as the "LaCour plaintiffs." The remaining group of plaintiffs, the "Thompson plaintiffs," had their claims dismissed by the district court because they failed to provide the discovery specifically required under the court's discovery scheduling orders. The sole remaining group of plaintiffs are the "LaCour plaintiffs," the appellants herein.
 
 
 4
 The initial complaint was filed on November 1, 1984. Discovery was subsequently conducted, but the parties disagree as to the diligence of the other party's efforts. Georgia-Pacific claims that Southside conducted "very little discovery and actively resisted much of the discovery effort undertaken" by defendants. Plaintiffs, however, insist that they conducted all the discovery they were capable of undertaking, considering their limited economic resources, among other things.
 
 
 5
 The case was originally set to be tried in December 1987, but was later continued to give Southside more time to develop their expert testimony. During 1988 and 1989, numerous status conferences were held in an attempt to get the litigation moving toward trial. Much of this delay was engendered by the "Thompson plaintiffs," but by this time LaCour was representing the "LaCour plaintiffs" so the responsibility for delay must fall partially on their shoulders.
 
 
 6
 At a pretrial conference held on March 3, 1989, defendants proposed a detailed scheduling order which would force all parties to comply with certain pretrial deadlines. The court entered a scheduling order on November 28, 1989. The plaintiffs failed to comply with the order, contending that they were not given sufficient time to adequately prepare the case for trial. On December 6, 1989 the U.S. Magistrate amended the scheduling order, and pushed back some of the initial discovery deadlines.
 
 
 7
 The plaintiffs again failed to meet the amended discovery deadlines, and on April 4, 1990 the district court dismissed certain claims of the Thompson plaintiffs. As to the LaCour plaintiffs, the district court noted that Mr. LaCour had taken full responsibility for his clients' failure to timely comply with the scheduling order, and that under the circumstances, dismissal of plaintiffs' claims would be too harsh. The court, however, imposed sanctions against Mr. LaCour, ordering him to pay defendant its expenses caused by LaCour's delay.
 
 
 8
 On October 22, 1990, the district court granted a motion by defendants to dismiss all remaining claims of the Thompson plaintiffs. Defendants also moved for a dismissal of all the claims of the LaCour plaintiffs. The court held an evidentiary hearing on December 5, 1990 to consider this matter. The court informed the plaintiffs that they were expected to be in "full compliance" with the scheduling order. However, plaintiffs could only argue that they had "substantially complied" with some deadlines, and requested additional time to comply with others. The court, however, allowed the plaintiffs until February 15, 1991 to come into full compliance with all the deadlines in the scheduling order. Defendants' motion to dismiss was continued pending a hearing to be held on February 22, 1991.
 
 
 9
 At the February 22 hearing the court again discovered that LaCour had not come into full compliance with the scheduling order. In particular, the court noted that under paragraph 1(a) of the order, plaintiffs were required to produce a list of individuals asserting soil damage claims, as well as "information regarding 'the nature of the damage and the address of [each] property allegedly damaged,' no later than April 1, 1990." Plaintiffs merely produced a list of the names and addresses of approximately 300 potential property damage claimants, and limited information about their proposed property damage expert, Mr. Mollica. However, plaintiffs did not identify "the nature and extent of the soil damage claims." In addition, Mr. Mollica presented to defendants a preliminary report "less than a week before the hearing." This report failed to address any of the alleged soil damage. The court also noted that plaintiffs failed to identify their expert witnesses on this issue.
 
 
 10
 Plaintiffs attempted to evade the above requirement by serving defendants with a request for documents one week before the hearing. Plaintiffs claim that their experts needed this information to develop their testimony. The court recognized that plaintiffs were merely stalling, and stated: "The court knows of no reason why this information could not have been requested at an earlier date. Further ... most, if not all, of the information requested ... had been previously produced."
 
 
 11
 Next, the court found that plaintiffs failed to comply with paragraph 1(c), which required plaintiffs to provide certain detailed information relating to their property damage expert, Mr. Mollica, by June 1, 1990. This information was supposed to include "the substance of the proposed testimony to be offered on each property." In the report, however, Mr. Mollica warned that his findings were only "preliminary." This was not sufficient to fully comply with the scheduling order.
 
 
 12
 Finally, the court cited paragraph 1(d) of the scheduling order, which required the plaintiffs to identify their respective medical causation experts, and to provide the following information with respect to each: (1) such expert's business address and telephone number; (2) the individual claimant or claimants on whose behalf such expert is expected to testify; (3) the substance of such expert's anticipated testimony on each claim; (4) a copy of any written report such expert has supplied on this matter; and (5) a copy of such expert's qualifications or curriculum vitae.
 
 
 13
 On November 2, 1990, the plaintiffs provided the defendants with the names, addresses, and curricula vitae of three proposed "toxicology/medical evaluation experts." However, no information was provided on the substance of their testimony, there was no report from any of the experts, and the plaintiffs failed to identify the names of the claimants on whose behalf each expert would testify. In an attempt to extend the deadline for complying, plaintiffs sent defendants a request for "written information" four days before the February 22 hearing, seeking the production of a voluminous amount of information. The court recognized that plaintiffs should have made this request "much earlier," and found that it did not excuse compliance with paragraph 1(d).
 
 
 14
 Based on the above findings, the district court held:
 
 
 15
 [I]t is clear that the LaCour plaintiffs have failed to produce all the information and materials specified [within] the requisite time frame--a time frame that has yielded and surrendered to accommodate the needs of the LaCour plaintiffs. The court is unaware of any reason why the LaCour plaintiffs could not produce the requested information within the time parameters ordered by this Court. Counsel for the LaCour plaintiffs personally participated in the preparation of the discovery schedule set out in the November 1989 scheduling order. The Court had attempted to place into effect a discovery deadline so this matter could be prepared for trial after it had lingered for over five years. Sanctions were imposed upon the Lacour plaintiffs in April 1990. Notwithstanding the passing of the discovery production deadlines and the Court's imposition of sanctions, the LaCour plaintiffs continuously failed to take measures to bring themselves into compliance. [They] were on notice that full compliance was essential if they were going to be allowed to pursue their claims.
 
 
 16
 Joint Appendix at 38-39. The court also noted that the plaintiffs made very little effort to come into compliance during the time the motion to dismiss was filed and the hearing was held. The court held that it gave plaintiffs "one last chance" at the December 5, 1990 hearing, and that they failed to comply even after this opportunity.
 
 
 17
 The court felt it had no other choice but to dismiss the plaintiffs' claims, holding:
 
 
 18
 Dismissal of a party's claim for refusal to comply with a scheduling order is of course an extreme sanction that is only appropriate in limited circumstances. This, however, is one such case. The LaCour plaintiffs have willfully and repeatedly failed to produce the discovery materials outlined in the November 1989 scheduling order. They have exhibited an utter lack of good faith in their efforts to comply with the instructions of this Court. Much of the discovery information finally produced was presented to the defendants less than twenty-four hours before the February 22 hearing. The LaCour plaintiffs requested the production of information from the defendants they sought necessary to respond to the defendants' discovery demand, less than one week before the hearing.
 
 
 19
 The record before the Court shows no hope of full compliance being made in the foreseeable future. This Court knows of no means at its disposal for compelling compliance. The LaCour plaintiffs have been warned, sanctioned, and placed on notice that their claims were at risk of being dismissed if they did not fulfill all their obligations under the November 1989 scheduling order.
 
 
 20
 Id. at 39-40.
 
 
 21
 On March 13, 1991, plaintiffs filed a motion for reconsideration, arguing, inter alia, that they had, in fact, complied with the scheduling order, and that any non-compliance should be excused because plaintiffs were not able to comply because of their limited resources and because their attorney was a sole practitioner. The court considered, and then rejected, plaintiffs' motion to reconsider, reasoning: (1) LaCour was given ample notice that dismissal would be the result of future noncompliance; (2) the express language of the scheduling order provided for the imposition of harsh sanctions, including dismissal; (3) the limited financial resources of plaintiffs, or the fact that their counsel is a sole practitioner is no excuse; plaintiffs clearly had the ability to comply; (4) bad faith was demonstrated by plaintiffs' discovery request made on the eve of the February 1991 hearing; (5) plaintiffs delay was prejudicial to defendants; (6) there was little hope of future compliance; and (7) any additional extensions would squander the resources of defendants and the court.
 
 
 22
 Plaintiffs then appealed the district courts February 27, 1991 opinion and order, and the order denying their motion for reconsideration.
 
 II.
 
 23
 Plaintiffs first argue that the district court abused its discretion in dismissing their claims for failing to comply with the scheduling order because they had, in fact, substantially complied and any noncompliance was excused by factors which were beyond their control.[2]
 
 
 24
 Federal Rule of Civil Procedure 37(b)(2) permits a court to make "such orders ... as are just" with regard to a party's failure to obey a discovery scheduling order made under Federal Rule of Civil Procedure 26(f). Examples of orders that may be just, depending on the circumstances, are:
 
 
 25
 (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering judgment by default against the disobedient party.
 
 
 26
 Fed.R.Civ.P. 37(b)(2)(C). It is well established that court orders imposing sanctions under this rule, including the ultimate sanction of dismissal, are reviewable only for abuse of discretion. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976).
 
 A.
 
 27
 A court's authority to dismiss claims for failure to comply with a discovery order is not unlimited, however. The courts have traditionally required that the ultimate sanction of dismissal be imposed only "if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." Patton v. Aerojet Ordnance Co., 765 F.2d 604, 607 (6th Cir.1985). However, more recently, the Sixth Circuit has expanded the scope of the district court's authority to dismiss a plaintiff's claims for failure to comply with discovery. In Regional Refuse Systems, Inc. v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir.1988) the court held that where a party has the ability to comply with a discovery order, yet does not, dismissal is not an abuse of discretion even where willfulness or bad faith is not shown. Id. (citing National Hockey League, 427 U.S. at 642-43). It follows, however, that a district court may not order dismissal where a party is unable to comply with a discovery order. "The burden of proof is on the dismissed party to establish 'that the failure to comply was due to inability, and not willfulness, bad faith or fault.' " Id. Thus, as a threshold matter, we must determine whether plaintiffs, in the present case, met their burden of proving that they were unable to comply.
 
 
 28
 Plaintiffs have presented this court with several justifications for their noncompliance, which, they argue, rendered them unable to comply with the scheduling order. The district court considered, and rejected, each of the plaintiffs' excuses. We agree that the following did not justify plaintiffs' egregious conduct.
 
 
 29
 First, the district court considered plaintiffs' limited financial resources, and provided plaintiffs with ample time to complete discovery in light of these limitations. LaCour was involved with this case for nearly two years. At the December 1990 hearing, in which LaCour participated, the court held that full compliance would be required by February 1991. LaCour agreed that these deadlines were reasonable and would be satisfied. Yet he made very little progress toward completion of any of the goals. We believe that it is rather disingenuous for LaCour to argue, at this late stage of the proceeding, that his clients did not have the financial resources to comply. This was a factor which should have been considered before he accepted the case. As a sole practitioner, counsel should have recognized that he may not have had sufficient resources to litigate such a complex matter without causing significant delay and prejudice to the rights of the defendants. Furthermore, the district court was exceedingly flexible in allowing extensions of time so that plaintiffs could complete discovery.
 
 
 30
 Secondly, plaintiffs argue that any delay should be excused because Mr. LaCour suffered personal tragedy in December 1989 and January 1990. Apparently counsel endured illness and the deaths of several family members. However, LaCour never raised the issue of the deaths of his relatives at the December 5, 1990 hearing. It was there that he stated that he was fully prepared to comply with the February 1991 deadlines. We will not allow counsel to belatedly use this excuse to justify inability to comply, and nevertheless find that it is not sufficient to explain counsel's repeated oversights.
 
 
 31
 Third, plaintiffs argue that compliance was made more difficult because counsel was beseiged by 300 new potential claimants. However, LaCour had an overriding duty to the court and to his present clients, the "LaCour plaintiffs," to litigate the pending claims. Although LaCour filed a motion to amend the complaint to add the additional plaintiffs, it was denied. At no time did LaCour request a stay or extension of discovery. Therefore, this is not sufficient to show inability to comply.
 
 
 32
 Lastly, plaintiffs claim that their relationship with former counsel Thompson caused delay. LaCour argues that he was relying on Thompson to provide certain information, but that Thompson failed to cooperate. However, LaCour does not argue that Thompson had exclusive access to key information which he could not acquire from an alternate source. Counsel therefore had a duty to gather information from all possible sources. Furthermore, LaCour had nearly two years to acquire this information, yet made little effort. Therefore, Thompson's intransigence will not relieve counsel of his duties to both his clients and the court.
 
 B.
 
 33
 Assuming, arguendo, that compliance was possible, the court may dismiss a plaintiff's claim in an appropriate case. Regional Refuse, 842 F.2d at 154. This circuit has considered a number of factors when reviewing a district court's dismissal order.
 
 
 34
 First, the reviewing court must consider whether the adversary has been prejudiced by the noncompliant party's actions. Taylor v. Medtronics, Inc., 861 F.2d 980, 986 (6th Cir.1988). In the instant case, we believe that the defendants were materially prejudiced by the plaintiffs' repeated failure to comply with discovery deadlines. The court noted that "the defendants are entitled to have the claims asserted against them adjudicated within a reasonable time period." During the sixteen month interval between the scheduling order, imposed in November 1989, and the February 1991 hearing plaintiffs made only minor progress toward complying with the deadlines. Likewise, only minimal efforts were made at compliance between the hearing on the motion to dismiss and the February 1991 hearing. At this proposed pace, defendants would not likely see a resolution to this dispute for several more years. In addition, it would have been prejudicial to force defendants to comply with plaintiffs' "last minute" discovery requests which were designed only to extend the original deadlines, and further delay the beginning of trial. Moreover, the additional legal fees incurred by defendants in attempting to obtain plaintiffs' compliance is the type of prejudice, cited by the court in Taylor, which may justify dismissal.
 
 
 35
 Secondly, Taylor provides that dismissal is appropriate only where the district court warned the party that failure to cooperate would result in dismissing the action. Id. In this case, the plaintiffs were put on notice that dismissal would be the likely result of any failure to comply. At the December 1990 hearing, the court advised plaintiffs' counsel that he had "a deadline of February 15 absolutely and positively now." LaCour agreed that he would comply. Furthermore, Paragraph 1(a) of the November 1989 scheduling order expressly stated that "failure to comply with this provision shall result in dismissal of the soil damage ... claims." Paragraph 1(b) provides for dismissal of plaintiffs' personal injury claim under similar circumstance. The district court noted that these paragraphs provide adequate notice, and since plaintiffs failed to meet paragraph 1(a) or (b) those claims were properly dismissed.
 
 
 36
 Third, Taylor requires us to determine whether less drastic sanctions were imposed or considered before dismissal was ordered. Id. In the action below, the court considered, and imposed less drastic sanctions on plaintiffs before dismissing their case. Plaintiffs were ordered to pay certain expenses to defendants for their refusal to comply with the discovery order on April 4, 1990. Moreover, the court was generous in granting extensions to the plaintiffs when they were unable to comply, even though harsher sanctions may have been appropriate.
 
 
 37
 Finally, the Taylor court cited the " 'willfulness' of the offending party's failure to comply" with the court's discovery order as another relevant inquiry. Id. In the present case, the court held:
 
 
 38
 [T]he LaCour plaintiffs have exhibited an utter lack of good faith in their efforts to comply with the discovery order of this Court by their repeated and willful failure to produce discovery materials outlined in the November 1989 scheduling order.
 
 
 39
 Joint Appendix at 469. The court cited the numerous warnings given to plaintiffs, the repeated failure to comply, their attempt to delay compliance on the eve of the February 1991 hearing by making a belated discovery request, and the fact that when they did attempt to comply, there was never full compliance. See id. at 469-70.
 
 
 40
 Plaintiffs argue that their actions do not demonstrate bad faith, and that they exercised their best efforts to attempt to comply with the deadlines. Although we recognize that the plaintiffs did provide some information, after nearly two years of discovery, they had failed to meet most of the substantive requirements of the discovery order.[3] Based on the foregoing, and coupled with LaCour's continued excuses and attempts to shift the blame onto others even when confronted by a motion to dismiss, we believe that the attorney's overall conduct in this matter demonstrates less than a good faith effort to comply. Because the four Taylor factors have been met, we find that dismissal was justified.
 
 III.
 
 41
 Plaintiffs next argue that the dismissal violated their rights under the due process clause of the fifth amendment. This argument was not raised below, so we need not consider it for the first time on appeal. White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir.1990).
 
 
 42
 Even if we do consider plaintiffs' second assignment of error on the merits, it must be rejected. Though it is true that the due process clause of the fifth amendment limits the power of courts to dismiss an action without hearing, Societe Internationale v. Rogers, 357 U.S. 197, 209-10 (1958), this "does not mean that every order [of dismissal] entered without notice and a preliminary adversary hearing offends due process." Link, 370 U.S. at 632. Any inadequacy in the measure of due process afforded to a plaintiff is cured by the availability of corrective measures such as Fed.R.Civ.P. 60(b). Id.
 
 
 43
 More specifically, the courts have held that "lack of a hearing does not offend due process where the plaintiff had ample warning of the consequences of his failure to comply with court orders." Spiller v. U.S.V. Laboratories Inc., 842 F.2d 535, 538 (1st Cir.1988) (citing Link, 370 U.S. 626); Rhone Poulenc, Inc. v. United States, 899 F.2d 1185 (Fed.Cir.1990) (no due process violation where party had knowledge of possibility of dismissal and where dismissal was a consequence of his own conduct). We find that the notice and hearing afforded plaintiffs in this case was constitutionally ts adequate, and that the resulting dismissal comported with due process.
 
 IV.
 
 44
 For the foregoing reasons, the district court's order is hereby AFFIRMED.
 
 KEITH, Circuit Judge, dissenting
 
 45
 I respectfully dissent from the majority opinion because I believe that the district court abused its discretion in dismissing plaintiffs' claims.
 
 
 46
 As the majority opinion notes, this Circuit has held that dismissal of claims for failure to comply with a discovery order may be imposed if failure "is due to willfulness, bad faith, or fault," Patton v. Aerojet Ordinance Co., 765 F.2d 604, 607 (6th Cir.1985), or "where a party has the ability to comply with a discovery order, yet does not," regardless of whether willfulness or bad faith is shown. Regional Refuse Systems, Inc. v. Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir.1988) (emphasis added).
 
 
 47
 I believe that the record is clear that Mr. LaCour's non-compliance was not willful or in bad faith. Mr. LaCour made all scheduled hearings and kept opposing counsel apprised of both his progress and his problems. As such, this Court's conclusion can be justified only by a finding that Mr. LaCour possessed the ability, yet failed to comply with the discovery order.
 
 
 48
 Such a finding is not warranted in the instant case. Rather, I believe that Mr. LaCour, under the circumstances, did not have the ability to comply with the discovery order for several reasons. First, Mr. LaCour became trial counsel to the "LaCour Plaintiffs" nearly five years after Attorney H. Lee Thompson filed the original complaint on behalf of all plaintiffs. Second, Mr. LaCour, as represented at oral argument, was not privy to the information that Mr. Thompson had compiled over the past five years, and, in effect, had to start his preparation of the case from square one. Third, Mr. LaCour suffered a serious illness during his period of representation which clearly hindered his ability to work on this case. Fourth, Mr. LaCour had to endure other personal tragedies in his immediate family, namely the death of a relative for whom he was primarily responsible.
 
 
 49
 In light of these existing circumstances, I believe that the district court's dismissal of plaintiffs' claims was an abuse of discretion. As such, I would reverse and remand this case for a trial on the merits.
 
 
 
 [1]
 These include Carl Booth, Roberta Booth, Getherine Cyriak, R.A. Martin and S. Martin
 
 
 [2]
 As an initial matter, we note that jurisdiction is appropriate in this case under 28 U.S.C. § 1332 as the parties are of diverse citizenship
 
 
 [3]
 It came to light at oral argument that subsequent to the district court's order dismissing this case, plaintiffs' counsel had made some progress toward completing discovery. Counsel stated that he provided the defendants certain expert testimony in December 1991, after the district court's order of dismissal. However, these efforts at complying with the discovery order have no effect on our analysis of whether the district court abused its discretion on February 22, 1991