### P. Stephen KINNARD; E. Glyn Kinnard; Stephanie K. Cox; Kinnard Enterprises, d/b/a Shoney's, Plaintiffs–Appellants,

v.

### SHONEY'S, INC., Defendant–Appellee.

### No. 00–5780.

United States Court of Appeals, Sixth Circuit.

July 18, 2002.

Before SILER and CLAY, Circuit Judges; and OBERDORFER, District Judge.[*]

SILER, Circuit Judge.

Plaintiffs P. Stephen Kinnard, E. Glyn Kinnard, and their daughter, Stephanie K. Cox (the "Kinnards"), filed suit against Shoney's, Inc. alleging breach of franchise agreements, violations of Indiana franchise statutes, franchise fraud and common law fraud, breach of fiduciary duty to franchisees, trover and conversion, constructive fraud and breach of fiduciary duty to joint venturers. After the Kinnards' motion to compel discovery was denied, summary judgment was granted in favor of Shoney's. For the reasons set forth below, we affirm.

## Background

Before becoming a Shoney's franchisee, Steve Kinnard worked for Shoney's for fourteen years. He entered into a licensing agreement with Shoney's in December 1988, permitting him to open a Shoney's restaurant on Michigan Road in Indianapolis, Indiana (the "Michigan Road license"). He entered into a second licensing agreement with Shoney's in April 1991, permitting him to open a second Shoney's restaurant on Greenfield Road in Indianapolis (the "Greenfield license"). In May 1991, Mr. Kinnard assigned both the Michigan Road and the Greenfield licenses to himself, his wife Glyn Kinnard and his daughter Stephanie Cox.

In 1995, the Kinnards fell behind in the payment of their obligations to Shoney's. Shoney's notified the Kinnards on October 14, 1996, that because their default had not been cured, the licensing agreements for both restaurants were terminated. On October 30, 1996, the parties agreed to enter into a termination agreement, reinstatement agreement and forbearance agreement. Each of these agreements contained a release provision which extinguished all claims the Kinnards may have had against Shoney's.

Mr. Kinnard also invested in the 1977 Shoney's Ownership Plan ("ownership plan" or "joint venture"). Under this plan, officers and employees of Shoney's could invest in the operations of selected restaurants owned and operated by Shoney's. The ownership plan did not own any tangible assets of the restaurants, but invested in the restaurants and were to receive profits from them.

On June 27, 1997, the Kinnards filed suit in Indiana state court against Shoney's. The case was removed to the United States District Court for the Southern District of Indiana and transferred to the United States District Court for the Mid-

---

[*] The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

dle District of Tennessee. Later, the Kinnards filed their first amended complaint alleging breach of franchise agreements, violations of the Indiana franchise statutes, franchise fraud and common law fraud, breach of fiduciary duty to franchisees, trover and conversion, constructive fraud and breach of fiduciary duty to joint venturers.

In the November 1998 case management order, the district court stated that all discovery related matters were to be filed by March 19, 1999 and "[n]o motions related to discovery ... shall be filed until a [discovery] order dispute conference has taken place and the attorneys of record shall attend and meet, face to face, in an effort to resolve the dispute and a jointly signed [discovery] order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved." The Kinnards filed a motion to compel discovery on March 19, 1999. In support of the motion, they filed a certificate of consultation, signed only by their counsel. On April 20, 1999, the district court denied the Kinnards' motion to compel discovery for failure to submit a jointly signed discovery order dispute statement in direct contravention of the case management order.

On April 2, 1999, Shoney's filed a motion for summary judgment on all claims. The district court granted summary judgment in favor of Shoney's on April 25, 2000. *See Kinnard v. Shoney's, Inc.*, 100 F.Supp.2d 781 (M.D.Tenn.2000).

## Standard of Review

We review *de novo* a district court order granting summary judgment. *See Brannam v. Huntington Mortgage Co.*, 287 F.3d 601, 603 (6th Cir.2002). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

"[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994) (citation omitted). Accordingly, we review discovery matters under an abuse of discretion standard. *See id.*

## Discussion

The Kinnards assert that the district court abused its discretion by denying their motion to compel discovery based solely on their failure to comply with the case management order. Further, they claim that the district court misinterpreted the Indiana Deceptive Franchise Practices Act. They also argue that the district court erred in holding that Shoney's was not contractually obligated to maintain certain standards in its company-owned stores. Additionally, Mr. Kinnard asserts that the district court erred in concluding that Shoney's did not breach its fiduciary duty to the joint venturers. We shall address each argument in turn.

## A. Motion to Compel Discovery

The Kinnards claim that they were prejudiced by the enforcement of the case management order because they were unable to obtain opposing counsel's signature. Although we find that such an order requiring a jointly signed certificate of consultation may be problematic in some instances, the denial of the Kinnards' motion to compel discovery based on their failure to comply with the case management order was not an abuse of discretion in this case.

Counsel for the parties met on March 10, 1999 to discuss unresolved discovery matters. After the meeting, on March 17, 1999, the Kinnards' counsel sent a letter by facsimile to Shoney's counsel addressing certain documents or information sought and submitting a proposed certificate of consultation for Shoney's counsel to sign. On the following day, March 18, counsel for Shoney's faxed a letter to the Kinnards' counsel responding in detail to the letter of the previous day. The letter addressed various discovery issues and agreed to further respond to certain interrogatories and to produce additional documents. Counsel for Shoney's also stated in the letter that he would not sign the proposed certificate of consultation because "a number of issues were left open at the end of our meeting as you had not completed your review of the documents that we had produced; I asked you to clarify and/or limit certain requests following your document review in the event that you still wanted to pursue certain categories of documents." He, however, explained that he would sign a certificate that appropriately reflected the status of discovery. Without any further contact with Shoney's counsel, the Kinnards filed their motion to compel on March 19, 1999. They attached to the motion a certificate of consultation signed only by their counsel. The motion failed to acknowledge the March 18 letter from Shoney's counsel. A supplemental filing in support of the motion to compel was filed on March 26, 1999 by the Kinnards, to which they attached the March 18 letter. This filing, however, failed to address the issues raised in the letter nor did it discuss how they related to the motion to compel.

The Kinnards never suggested to the district court that they could not meet the requirements of the case management order, nor did they give the court any reason to waive joint certification. There was plenty of time between the motion and the court's decision for the Kinnards to update their motion with a jointly signed certificate. Moreover, they could have filed an additional motion to compel Shoney's to sign the original certificate. They took no action to remedy their failure to comply with the case management order or to at least advise the court of their inability to comply with said order.

### B. Violations of the Indiana Deceptive Franchise Practices Act

The Kinnards allege two violations of the Indiana Deceptive Franchise Practices Act. First, they assert that the Greenfield license agreement contains a "limitation on litigation" clause that violates Ind.Code § 23–2–2.7–1(10). Second, they allege that the reinstatement agreement contains a prospective release that violates Ind.Code § 23–2–2.7–1(5). Neither of these claims was addressed by the Kinnards in their response in opposition to Shoney's motion for summary judgment, nor in their motion for *de novo* determination. "The general rule is that the circuit court will not address issues on appeal that were not raised and ruled upon below." *Meade v. Pension Appeals and Review Comm.*, 966 F.2d 190, 194 (6th Cir.1992). We may address a claim that has not been ruled on by the district court "in exceptional circumstances" where "the proper resolution is beyond doubt or where injustice might otherwise result." *Id.* (internal quotation marks and citations omitted). Because there are no exceptional circumstances in this case that would warrant a deviation from the general rule, we decline to address these claims.

### C. Breach of the Franchise License Agreements

The Kinnards allege that Shoney's violated the license agreements by failing to maintain certain standards in its company-

owned restaurants. All of the Kinnards' claims against Shoney's arising on or before October 30, 1996 were released and extinguished by the termination, reinstatement and forbearance agreements. Any claim of breach of the franchise agreements prior to October 30, 1996 is considered released.

Assuming that this claim relates to a breach of the franchise agreements after October 30, 1996, we find that although the claim may not be released, it is time-barred. The Tennessee six-year statute of limitations for breach of contract, Tenn. Code Ann. § 28–3–109(a), applies. An action for breach of contract accrues when the breach occurs. *See Dean Witter Reynolds, Inc. v. McCoy*, 853 F.Supp. 1023, 1036 (E.D.Tenn.1994). The Kinnards believed that Shoney's company-owned stores were operating below standards in 1989. Assuming this can be considered a breach of the franchise agreements, the statute of limitations had run by the end of 1995, two years before this suit was filed. Accordingly, we find that this claim is time-barred.

**D. Breach of Fiduciary Duty to Joint Venturers**

Mr. Kinnard contends that Shoney's had a duty to treat the joint venture restaurants the same as other company-owned restaurants. Thus, he argues that Shoney's breached its fiduciary duty when it cut the rent expenses and franchise fees to be paid by other company-owned restaurants and did not include those restaurants within the joint venture group. Claims based on fiduciary breaches are quasi-contractual in nature and the applicable statute of limitations is six years pursuant to Tenn.Code Ann. § 28–3–109(a). *See Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn.1977). As with actions for breach of contract, an action alleging breach of fiduciary duty accrues when the breach occurs. *See Dean Witter*, 853 F.Supp. at 1036.

In 1977, the plan restaurants were charged a 1.5% to 2% franchise fee and rent at 6% of gross sales. Shoney's charged the same franchise fee and rent to all company-owned restaurants with a few exceptions. In 1988, Shoney's reduced the franchise fee to non-plan restaurants from 1.5% to 1.0%. In 1989, Shoney's decided to charge rent to new non-plan restaurants based on cost of capital, rather than at 6%. Plan and non-plan restaurants were charged different franchise fees and rents as early as 1988. Mr. Kinnard seems to assert that these changes were first instituted in 1989. Even assuming the breach first occurred in 1989, the statute of limitations had run by the end of 1995, well before the Kinnards filed their suit in 1997. Thus, this claim is time-barred.

AFFIRMED.