Donnie Diane FREELAND; Lyle M. Freeland, Plaintiffs–Appellants,

v.

Dr. Isidro AMIGO, Defendant–Appellee.

No. 95–4195.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 13, 1996.

Decided Jan. 10, 1997.

Neil Freund (argued), Lisa A. Hesse (briefed), Freund, Freeze & Arnold, Dayton, OH, for Donnie Diane Freeland.

Neil Freund (argued), Freund, Freeze & Arnold, Dayton, OH, for Lyle M. Freeland.

Kenneth Steven Blumenthal, Joseph Francis Elliott (argued and briefed), Porter, Wright, Morris & Arthur, Columbus, OH, Randall W. Knutti, Ulmer & Berne, Columbus, OH, for Isidro Amigo.

Before: CONTIE, SUHRHEINRICH, and MOORE, Circuit Judges.

CONTIE, Circuit Judge.

Plaintiffs-appellants, Donnie Diane Freeland and her husband Lyle M. Freeland, appeal the district court's grant of summary judgment to defendant-appellee, Dr. Isidro Amigo, in this diversity medical malpractice action.

## I.

Plaintiff, Donnie Diane Freeland, presented herself to defendant, Dr. Amigo, on August 23, 1993, complaining of weight loss, nausea, and various other symptoms. Dr. Amigo diagnosed a possible calculus cholecystitis and scheduled a laparoscopy with possible cholecystectomy. Plaintiff was admitted to Selby General Hospital for surgery and consented to "insertion of a scope with a light source into the abdomen, examination of the abdomen, possible excision of the gallbladder, [and] possible abdominal incision."

On September 23, 1993, during surgery, Dr. Amigo performed a laparoscopic cholecystectomy (removal of the gallbladder). After the doctor had removed plaintiff's gallbladder, he proceeded to repair a left inguinal hernia through the laparoscope. Following surgery, plaintiff complained and the nurse noted complaints "of left leg from groin area to knee area numb." On October 19, 1993, plaintiff underwent a electromyogram with an impression given of left

femoral nerve neuropathy. Plaintiff also had extensive physical therapy and left femoral cutaneous nerve blocks at the Cleveland Clinic.

On September 9, 1994, plaintiffs filed suit against defendant, Dr. Amigo, alleging Ohio law claims of medical malpractice and battery. Plaintiffs alleged that Dr. Amigo had been negligent in the performance of the surgery on Mrs. Freeland when he permanently injured her left femoral nerve. Plaintiffs also sued Dr. Amigo for battery, alleging that, without any prior discussion or consent, he decided to explore her abdomen and then, without consent, attempted a left inguinal herniorrhaphy with a laparoscopic instrument. As a result, he damaged the femoral nerve, causing Mrs. Freeland to suffer great pain and substantial disability. The Freelands also alleged a derivative loss of spousal services and consortium by Mr. Freeland.

On January 11, 1995, a preliminary pretrial conference was held before the district court. On January 24, 1995, a final pretrial order was filed by the district court, setting a trial date for October 2, 1995, and stating in part:

> No depositions may be scheduled to occur after the discovery cutoff date. All motions, requests for admissions, or other filings that require a response must be filed sufficiently in advance of the discovery cutoff date to enable opposing counsel to respond by rule prior to that date.
>
> Counsel may, by agreement, continue discovery beyond the cutoff date. No supervision or intervention by the Court, such as a Rule 37 proceeding, will occur after the cutoff date without a showing of extreme prejudice.

With a trial date set for October 2, 1995, all dispositive motions were to be filed by August 3, 1995, and the cutoff date for discovery was August 31, 1995. A final pretrial conference was scheduled for September 22, 1995. The order indicated that sanctions would be imposed for failure to comply with these dates, stating:

> Counsel are expected to comply literally with this pretrial order. The Court will consider the imposition of appropriate sanctions in the event of non-compliance, specifically, failures of counsel to comply with this order could result in sanctions, including limitations on evidence and witnesses permitted at trial, and dismissal of the action.

On February 1, 1995, defendants made a motion for continuance of the trial, which the district court never ruled on. On March 31, 1995, plaintiffs disclosed a list of their witnesses, including expert witnesses. On April 25, 1995, mediation was scheduled for June 21, 1995. Although plaintiffs attempted to depose Dr. Amigo earlier, Dr. Amigo was not available for deposition until two days before the mediation date. On June 20, 1995, defendant's attorney filed a motion for cancellation of mediation. The magistrate granted this motion and rescheduled mediation for December 1995.

On June 30, 1995, Dr. Amigo filed his disclosure of expert and lay witnesses. During June, July, and August 1995, Dr. Amigo's counsel made numerous telephone calls and wrote five letters to plaintiffs, requesting the scheduling of depositions for plaintiffs' expert witnesses before August 31, 1995, the discovery cutoff date. Plaintiffs' attorney did not respond to these requests.

Plaintiffs' attorney, Mr. Wolske, conceded that he did not respond to defendant's requests to depose plaintiffs' expert witnesses by August 31, 1995, but alleged that on prior occasions, he had worked with defendant's law firm and frequently had scheduled depositions, by agreement, beyond the court's deadlines. Wolske alleged that communications with defendant's attorney about an agreeable date for the deposition of plaintiffs' expert witnesses continued after the discovery cutoff date of August 31, 1995, indicating to him that there was an agreement to depose beyond the court's deadline. The record indicates that defendant agreed to depose two of plaintiffs' expert witnesses on September 25, 1995. Plaintiffs alleged that contrary to the ongoing discussions, defendant's attorney subsequently decided to revoke his agreement to continue discovery after the August 31st deadline.

On September 8, 1995, defendant notified plaintiffs that he was going to file a motion for summary judgment, and although he

would continue to try to schedule depositions, he was not waiving a summary judgment motion. On the same day, defendant filed a motion for leave to file a motion for summary judgment beyond August 3, 1995, which was the cutoff date for dispositive motions specified in the court's pretrial order of January 24, 1995. On September 15, 1995, defendant filed a motion for a protective order to preclude plaintiffs from deposing defendant's expert witness and a motion for an order to preclude the testimony of plaintiffs' expert witnesses at trial because of plaintiffs' alleged failure to meet discovery deadlines.

Originally, the pretrial conference was scheduled for Friday, September 22, 1995. On September 8, 1995, the district court rescheduled the conference for Wednesday, September 20th. Plaintiffs contended that they received notice of this change on September 11, 1995. A joint final pretrial statement was due one week before the pretrial conference. Thus, the joint pretrial statement became due on September 13, 1995, two days after plaintiffs received notice of the schedule change.

Plaintiffs' attorney, Wolske, alleged that he made efforts to assist in the preparation of a joint pretrial statement, but defendant was uncooperative. Defendant's attorney, Mr. Elliott, alleged that Wolske made no attempt to discuss a joint pretrial statement with him prior to the due date. Because Elliott did not hear from Wolske in time, he decided to file a separate pretrial statement for defendant on September 13, 1995, the date it was due. Wolske submitted a separate pretrial statement for plaintiffs at the pretrial conference on September 20, 1995.

At the pretrial conference, the district court indicated that plaintiffs' pretrial statement was not timely filed, and, therefore, defendant's timely filed pretrial statement would govern the trial. Mr. Elliott urged the court to dismiss the case for plaintiffs' failure to comply with the court's pretrial order of January 24, 1995, which had specified a discovery cutoff date of August 31, 1995, and stated that a joint pretrial statement was due one week before the final pretrial conference.

Plaintiffs' attorney argued that he had been led into a trap by defendant's attorney.

Wolske argued that the January 24, 1995 order allowed the parties to waive the discovery cutoff date by agreement and that Mr. Elliott had agreed to continue discovery beyond the August 31st cutoff date. Wolske contended that defendant's attorney then revoked his prior agreement in order to get the case dismissed on the basis of plaintiff's alleged failure to meet the August 31, 1995 discovery deadline.

The district court made no ruling about whether the discovery cutoff date had been waived. The court indicated that it would not accept plaintiffs' untimely filed pretrial statement, but that it would allow the testimony of plaintiffs' expert witnesses at trial because they had been listed on defendant's timely filed pretrial statement. The court then scheduled a hearing for the following day to decide on the three pending motions which had been filed by defendant.

The next day at the September 21st hearing, the court reversed its position of the previous day and stated it had decided to preclude plaintiffs' expert witnesses from testifying at trial as a sanction for Wolske's discovery abuses. The court orally simultaneously granted four motions of defendant: (1) a motion to preclude expert testimony; (2) a motion for a protective order; (3) a motion for leave to file summary judgment; and (4) a motion for summary judgment.

In granting the motion to preclude the testimony of plaintiffs' expert witnesses, the district court relied on Wolske's failure to provide a list of expert witnesses and exhibits in a final pretrial statement by the deadline of September 13, 1995, and on his failure to schedule the depositions of plaintiffs' expert witnesses before the discovery cutoff date of August 31, 1995. The district court stated that its January 24, 1995 order should have alerted plaintiffs' counsel of the relevant deadlines, and that although Wolske had nine months' notice of these deadlines, he failed to abide by them. The district court stated that plaintiffs had been warned of the possible sanction of exclusion of witnesses or dismissal for failure to strictly comply with the court's January 24, 1995 order, and, therefore, the court was justified in granting de-

fendant's motion to preclude the testimony of plaintiffs' expert witnesses as a sanction.

The district court also granted defendant's motion for a protective order, prohibiting plaintiffs from deposing defendant's expert witness, because plaintiffs failed to request this deposition before the discovery cutoff date of August 31, 1995. The district court noted that although the parties, by agreement, could conduct discovery after the cutoff date, the court would not intervene in the event of disagreement. Based on its previous ruling to strike plaintiffs' expert witness testimony, the district court then granted defendant's motion for leave to file for summary judgment beyond the motion cutoff date of August 3, 1995 and defendant's motion for summary judgment.[1] The district court stated that without expert testimony, plaintiffs would not be able to present a case, and, therefore, summary judgment should be granted to defendant.

Plaintiffs filed a timely notice of appeal on November 1, 1995.[2]

## II.

We review a grant of summary judgment *de novo. White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943 (6th Cir.1990). After orally granting summary judgment to defendant at the hearing on September 21, 1995, the district court stated in its October 3, 1995 opinion and order, the following:

> As a result of Plaintiffs' inability to present any exhibits or expert testimony regarding the applicable standard of care or Defendant's failure to meet the standard of care, Plaintiffs are unable to establish any issue of material fact regarding Defendant's negligence. Plaintiff's attorney acknowledged in Court the impossibility of establishing a case without the benefits of exhibits or expert testimony. Defendant's Motion for Summary Judgment is supported by Defendant's affidavit. Plaintiffs'

Memorandum Contra Defendant's Motion for Protective Order, Motion for Leave to File Summary Judgment, and Motion to Preclude Testimony is not supported by any testimony to contravene the evidence offered by Defendant. Defendant's Motion for Summary Judgment is therefore well taken and is hereby **GRANTED**.

 The district court erred in granting summary judgment to defendant based on plaintiffs' lack of affidavit or supporting testimony concerning the medical aspects of the case. At the September 21, 1995 hearing, the motions before the district court were defendant's motion for leave to file a motion for summary judgment beyond the motion cutoff date of August 3, 1995, the motion to preclude plaintiffs' expert testimony from trial, and the motion for a protective order. Defendant's motion for leave to file a motion for summary judgment out-of-time explained why defendant's counsel believed he was justified in filing for summary judgment beyond the motion cutoff date of August 3, 1995, in violation of the district court's January 24, 1995 order, which had specified that all dispositive motions were to be filed by August 3rd.

Although on September 21, 1995, the district court granted defendant's motion for leave to file for summary judgment beyond the August 3, 1995 cutoff date, the court made no decision about the medical malpractice issues presented in defendant's motion for summary judgment. Instead, the district court immediately granted summary judgment to defendant, because the court simultaneously held that none of plaintiffs' expert witnesses could be presented at trial, precluding plaintiffs from presenting their case. According to the record, defendant's motion for summary judgment, with the supporting affidavit of Dr. Amigo, was not actually filed with the court until October 3, 1995, the date the district court issued its written opinion and order.

---

1. Defendant did not actually file his motion for summary judgment, which was based on medical issues, not on plaintiffs' alleged discovery violations, until October 3, 1995, the date the district court issued its order and opinion.

2. On the same date, November 1, 1995, plaintiffs also filed a motion to vacate the judgment pursuant to Fed.R.Civ.P. 60(b). However, this motion was not a time-tolling motion, because it was not filed within ten days of judgment. Fed.R.App.P. 4(a)(4)(F). The district court never ruled on this motion.

Based on these facts, plaintiffs were not required to submit an opposing affidavit to defendant's motion for summary judgment based on the medical malpractice issues before the hearing on September 21, 1995. The three motions before the district court on that date were defendant's motion to preclude expert testimony, his motion for leave to file for summary judgment out-of-time, and his motion for a protective order. On September 20th, when the hearing for the next day was scheduled, the district court did not indicate to plaintiffs that the court was going to rule on defendant's motion for summary judgment, which was based on Dr. Amigo's affidavit discussing the malpractice issues.[3]

Moreover, as previously stated, the district court did not grant summary judgment to defendant on the basis of the medical malpractice arguments presented in defendant's motion for summary judgment, but on the basis of the court's decision to preclude plaintiffs' expert witness testimony from trial. Therefore, defendant's argument that plaintiffs' counsel failed to adequately respond to defendant's motion for summary judgment and to Dr. Amigo's affidavit discussing the medical malpractice issues has no merit.

The district court's second reason for granting summary judgment to defendant was based on plaintiffs' inability to present any exhibits or expert testimony at trial regarding the physician's applicable standard of care. However, this inability occurred because the district court simultaneously granted defendant's motion to preclude plaintiffs' expert witness testimony and exhibits from trial, preventing plaintiffs from presenting a medical malpractice claim. Despite defendant's contention to the contrary, the summary judgment decision cannot be isolated from the district court's other simultaneous decisions. Because we believe that the district court abused its discretion in granting defendant's motion to preclude plaintiffs' expert witness testimony, we find that the court erred in granting summary judgment

to defendant based on its decision to grant the motion to preclude.

## III.

The district court granted defendant's motion to preclude plaintiffs' expert witness testimony from trial because "plaintiffs ... failed to list both expert witnesses and exhibits as required by the Court's procedures in the Final Pretrial Order by the September 13, 1995 deadline." The court also found that "Plaintiffs have failed to furnish discovery from their expert witnesses by the discovery deadline of August 31, 1995, despite the fact that Defendant has sent five letters and made at least four telephone calls to Plaintiffs' counsel during the months of June, July and August in an unsuccessful attempt to schedule depositions of Plaintiffs' expert witnesses."

Although the sanction imposed by the district court for plaintiffs' alleged discovery violations was the preclusion of plaintiffs' expert witness testimony at trial, this sanction, in effect, resulted in the dismissal of plaintiffs' medical malpractice case, because without expert testimony, plaintiffs had no claim to present. Therefore, we will review the district court's actions pursuant to Fed.R.Civ.P. 37 as a sanction for discovery violations that resulted in dismissal of plaintiffs' case with prejudice. *See Societe Internationale v. Rogers,* 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958) (motion for dismissal for failure to comply with discovery order properly brought under Rule 37); *Coleman v. American Red Cross,* 23 F.3d 1091, 1094 n. 1 (6th Cir.1994) (factors considered when reviewing a dismissal under Rule 37(b), Rule 41(b), or a court's inherent power are largely the same). An order of the district court imposing sanctions under Rule 37(b) for willful failure to cooperate in discovery is reviewed under an abuse of discretion standard. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). Under Fed.R.Civ.P. 37(b)(2), a district court may sanction parties who fail to

---

**3.** At the pretrial conference on September 20, 1995, plaintiffs' counsel specifically indicated to the court that he understood that at the hearing on the next day, the court would rule on the three motions which defendant had previously filed.

comply with its orders in a variety of ways, including dismissal of the lawsuit. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir.1990). The use of dismissal as a sanction for failing to comply with discovery has been upheld because it accomplishes the dual purpose of punishing the offending party and deterring similar litigants from misconduct in the future. *National Hockey League*, 427 U.S. at 642–43, 96 S.Ct. at 2780–81.

■ In the present case, the district court's pretrial order of January 25, 1995 set a August 31, 1995 date for discovery cutoff, yet the order allowed the parties to waive this date by agreement. Specifically, the order stated:

> Counsel may, by agreement, continue discovery beyond the cutoff date. No supervision or intervention by the Court, such as a Rule 37 proceeding, will occur after the cutoff date without a showing of extreme prejudice.

The parties disputed whether or not there was an oral agreement to waive the August 31, 1995 discovery cutoff date in regard to the taking of depositions. The district court took the side of defendant and immediately imposed on plaintiffs the drastic sanction of preclusion of expert witnesses, resulting in dismissal of their case, for failure to comply with the discovery cutoff date, even though the record indicated that defendant had agreed to depose two of plaintiffs' expert witnesses on September 25, 1995.

Given this court's prior decisions discussing the harshness of a sanction that deprives an innocent party of their day in court, we believe the district court abused its discretion by intervening in the dispute about whether the discovery cutoff date had been waived on the side of defendant and then imposing the most drastic sanction possible upon plaintiffs, who were blameless, and as a result, lost their day in court. *See Coleman v. American Red Cross*, 23 F.3d at 1094–95 ("this court ... has been extremely reluctant to uphold the dismissal of a case merely to discipline an attorney"); *Vinci v. Consolidated Rail Corporation*, 927 F.2d 287, 287–88 (6th Cir.1991) (dismissal usually inappropriate where the neglect is the sole fault of the attorney); *Patterson v. Township of Grand Blanc*, 760 F.2d 686, 688 (6th Cir.1985) (same); *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir.1980) (reversing a dismissal under Rule 41(b) because, while plaintiff's counsel had been inept, the plaintiff was blameless).

This court has determined that four factors are to be considered when reviewing a decision by a district court to impose sanctions under Rule 37. *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154–55 (6th Cir.1988) [hereinafter, the *"Regional Refuse* test"]. The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered. *Id.; Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir.1995); *Bank One of Cleveland v. Abbe*, 916 F.2d at 1073.

In regard to the first factor, the Sixth Circuit has held that absent a clear record of delay or contumacious conduct, an abuse of discretion occurs if the district court dismisses an action with prejudice. *Carter v. City of Memphis*, 636 F.2d at 161. In *Carter*, this court reversed the district court's dismissal of a discrimination case where the plaintiff's attorney had failed to comply with a pretrial order that directed the parties to file pretrial statements and had failed to complete all discovery before the pretrial conference. *Id.* at 160. The district court's pretrial order in *Carter* had specifically warned the parties that failure to comply could result in dismissal. In *Carter*, the plaintiff's attorney, in contrast to the present case, had not even attempted to file a pretrial statement or to confer with opposing counsel about settlement. This court noted in *Carter*:

> Strict compliance with orders of a district court is an important duty of counsel. The attorney's efforts were wholly insufficient. He failed to engage in discovery, to discuss settlement, and to file appropriate pre-trial orders in a timely fashion as ordered by

the court. He did not move for a continuance. His disregard for the schedule established by the court could only have left him unprepared for trial. He did not file a Rule 60(b) motion for post-judgment relief on the grounds of excusable neglect.

Notwithstanding plaintiff's attorney's conduct, in our view, the district court abused its discretion in dismissing the complaint.

*Id.* at 161.

In the present case, the district court decided that the extreme sanction of preclusion of plaintiffs' expert witnesses at trial was justified, in part, because plaintiffs had not strictly complied with the September 13, 1995 date on which a joint pretrial statement was due. Plaintiffs did not submit a pretrial statement until September 20, 1995, and, therefore, the statement was untimely filed. However, the district court failed to take into consideration its change in scheduling, which only gave plaintiffs two days' notice of the new due date of September 13, 1995.[4] In light of this court's decision in *Carter*, we do not believe the district court was warranted in imposing such an extreme sanction merely because plaintiffs' pretrial statement was filed late, which is not an extreme situation showing contumacious conduct. *See also Patterson,* 760 F.2d at 688 (lack of compliance with court's orders within five days falls short of establishing a basis for final dismissal of the plaintiff's claim).

Moreover, this court has stated that an innocent plaintiff should not be penalized for the conduct of an inept attorney. In *Patterson,* this court reversed a dismissal, adjudging that sanction to be "extremely harsh in that it deprives a plaintiff of his day in court due to the inept actions of his counsel." *Id. See also Lolatchy v. Arthur Murray, Inc.,* 816 F.2d 951 (4th Cir.1987) (reversing a default judgment because the defendants did not contribute to their attorney's dilatory conduct); *Carter v. Albert Einstein Medical Center,* 804 F.2d 805 (3rd Cir.1986) (reversing a dismissal because plaintiff did not contribute to attorney's negligent conduct). As

was the case in *Carter* and *Patterson,* the plaintiffs herein were blameless. In contrast to the plaintiff in *Bass v. Jostens,* in which this court affirmed a dismissal after the plaintiff refused to be deposed, in the present case, the Freelands have never failed to appear for a deposition or otherwise contributed to any delay. As this court in *Coleman* stated, a potential claim against the plaintiff's attorney for negligence does not overcome the harm that the blameless plaintiff would suffer from dismissing the action. 23 F.3d at 1095. For these reasons, in regard to the first factor under the *Regional Refuse* test, we believe the district court abused its discretion in imposing an extreme sanction, which deprived blameless plaintiffs of their day in court, because the court decided that plaintiffs' attorney had not strictly complied with a pretrial discovery order issued nine months earlier. *See Regional Refuse,* 842 F.2d at 155 (this circuit has been more ready than others to reverse dismissals for the attorney's disobedience to discovery orders, especially when it appears that the party is blameless). As stated earlier, the district court's order of January 24, 1995 allowed the attorneys to waive the discovery cutoff date. We find that it is unclear from the record whether or not the discovery cutoff date was waived. In such a circumstance, we do not believe the district court was justified in imposing the most extreme sanction upon blameless plaintiffs for their counsel's alleged failure to meet the discovery deadline.

In regard to the second factor of the test—prejudice, we believe that in the present case the prejudice to defendant must be given less weight, because his attorneys also engaged in dilatory conduct, a factor which the district court failed to consider. *See Vinci,* 927 F.2d at 288 (defendant's attorney also failed to strictly comply with court's order). In the present case, defendant caused a delay in the mediation that had been scheduled for June 21, 1995. Dr. Amigo was not available for his deposition until June 19, 1995, two days beforehand. Defendant's counsel requested that the mediation date be extended. Plain-

---

4. Originally, the statement was due on September 15, 1995. After the district court changed the final pretrial conference from September 22nd to September 20, 1995, the joint pretrial statement became due on September 13, 1995. Plaintiffs received notice of the change on September 11, 1995.

tiffs' attorney did not object to a change in the mediation date, because he believed it was futile to mediate if one party was unprepared, in spite of the fact that he had spent two or three months trying to get defendant's deposition in anticipation of an early resolution of the suit.

Moreover, defense counsel did not alert the district court of a potential Rule 37 problem before the discovery cutoff date of August 31, 1995 as required by the district court's order of January 24, 1995. Also, before filing his motion to preclude plaintiffs' expert witness testimony, defendant did not comply with the requirement of Fed.R.Civ.P. 37(a)(2)(A) that the movant for a motion to impose discovery sanctions must first in good faith confer with the party not making disclosure.[5] However, the district court failed to take these lapses of defense counsel into account.

Furthermore, the prejudice to defendant, as stated by the district court, was exaggerated. The court found defense counsel was prejudiced by plaintiffs' counsel's failure to provide the depositions of plaintiffs' expert witnesses before the discovery cutoff date, because defense counsel would have to depose eight doctors between September 20th and October 2nd, the scheduled trial date. However, plaintiffs' counsel agreed to limit their witnesses to one or two experts, whose depositions had already been scheduled for September 25th, and to one treating doctor. Given these circumstances, we do not believe the prejudice to defendant outweighs the other three factors to be considered under the *Regional Refuse* test.

In regard to the third factor of the test—notice, this court has held that routine language in a standard order, warning counsel of possible dismissal as a sanction for failure to comply with any of the provisions of the order, is not necessarily sufficient prior notice to immediately warrant the extreme sanction of dismissal. *Vinci v. Consolidated Rail Corporation,* 927 F.2d at 288. In *Vinci,* this court discussed a prior case, *Harris v. Callwood,* 844 F.2d 1254 (6th Cir.1988) in

which this court held that if prior notice is given, a failure to appear may result in dismissal with prejudice without further notice. This court in *Vinci* found Harris distinguishable because in *Vinci* the case had only been on the docket eleven months when it was dismissed for failure to file a joint pretrial statement. This court in *Vinci* stated:

> We do not read *Harris* as justification for the action taken here by the trial court. In *Harris,* there were numerous derelictions of duty on the part of the plaintiff, including the failure to appear at two scheduled pre-trial conferences. The case had been on the docket for four years, had been dismissed for an earlier failure to prosecute, and then reinstated.

927 F.2d at 288. In *Vinci,* this court disagreed with the defendant's argument that the parties were put on notice that dismissal could be a sanction if there was a failure to strictly comply with dates in the court's orders, even though there was language in a standing order given to counsel in all cases, stating:

> Failure of counsel to appear at any scheduled pre-trial or otherwise comply with any of the provisions of this Standing Order may result in dismissal, default judgment, or the imposition of sanctions, as may be appropriate.

*Id.* This court stated in *Vinci:*

> Although we do not mean to suggest that this [order] should be construed as a hollow warning, we do not construe it to be, *under the circumstances of this case,* the kind of warning we envisioned in *Harris* when we spoke of notice that "*further* non-compliance would result in dismissal." This dismissal here appears to be almost mechanical; the date for the filing of the pretrial order had passed and an order of dismissal issued. The failure to exercise discretion can also constitute an abuse of discretion.

*Id.*

As was true in *Vinci,* we believe that in the present case, the district court abused its

---

5. Defense counsel argued before the district court that he viewed himself relieved of any obligation to confer. We do not agree.

discretion by mechanically dismissing this case. The notice provided in the district court's January 24, 1995 order was not firm and definite, but allowed the attorneys to violate the discovery cutoff date by agreement. In spite of this ambiguity and the dispute about whether the cutoff date was waived, the district court never gave notice to plaintiffs' counsel that further delay would result in stringent sanctions. Instead, the district court mechanically dismissed the case because the discovery cutoff date had passed. We find that in circumstances such as these, the third factor of the *Regional Refuse* test weighs in plaintiffs' favor.

Finally, in regard to the fourth factor, the district court failed to consider less drastic sanctions. Instead, plaintiffs were made to pay for the conduct of their attorney, although other effective alternatives existed to discipline counsel as well as to resolve any confusion and to avoid prejudice to Dr. Amigo. Although plaintiffs' counsel suggested alternatives to remedy any prejudice to defense counsel at the September 21st hearing, the district court refused to consider them and instead mechanically imposed the harshest sanction and dismissed the case.[6] In *Patterson*, 760 F.2d at 689, this court found that in the absence of contumacious conduct, an alternate sanction that would protect the integrity of pretrial procedures should be utilized rather than dismissal with prejudice. We believe a similar rationale applies in the present case.

In *Taylor v. Medtronics, Inc.*, 861 F.2d 980 (6th Cir.1988), although the plaintiff had ignored two prior discovery orders, the district court originally refused to impose the defendant's requested sanction, because it would have been too drastic. *Id.* at 983. The district court stated that it declined to strike the plaintiffs' expert's affidavit due to the "potential effect on plaintiffs' ability to present a case." *Id.* at 986. Instead, the district court in *Taylor* cautioned the plaintiffs that they had received their last chance and from this point forward, they had to strictly comply with court orders or face the conse-

quences. The court did, however, assess costs as a lessor sanction. *Id.*

After the plaintiffs in *Taylor* ignored a subsequent discovery order of the district court, the court then imposed the requested sanction of exclusion of the plaintiffs' expert's affidavit, because lesser sanctions had failed. *Id.* In contrast, in the present case, the district court failed to take "measured" and "gradual" steps before employing the drastic sanction of exclusion of plaintiff's expert witness testimony, resulting in dismissal. In *Taylor*, when the district court finally granted the defendant's requested sanction, it noted that it had denied several previous requests and that it had given an explicit warning to plaintiffs that failure to comply with future orders would result in drastic consequences, yet plaintiffs had continued to flout the court's authority. *Id.* The court of appeals in *Taylor* affirmed the district court's imposition of the drastic sanction of precluding the affidavit of the plaintiffs' expert witness (which, in effect, meant that plaintiffs had no case), in part, because the less drastic sanction of imposing costs had failed. *Id.*

In contrast, in the present case, the district court refused to consider the imposition of less drastic sanctions, but instead immediately imposed the sanction of preclusion of expert witness testimony leading to dismissal of the case. Plaintiffs' counsel, in contrast to the delinquent parties in the above-cited cases, had not long been on notice by way of repeated court orders of the inadequacy of his level of cooperation. *See Regional Refuse Systems*, 842 F.2d at 155–56 (failure to consider lesser sanctions is justified only in cases of egregious misconduct). As this court in *Beil v. Lakewood Engineering and Manufacturing Co.*, 15 F.3d 546, 552 (6th Cir.1994) stated, "[d]ismissal is the sanction of last resort." In the present case, there was no indication that a less drastic sanction would have failed or that the trial would have to be postponed. *See Bass v. Jostens*, 71 F.3d at 242–43 (less drastic monetary sanctions did not have desired effect as plaintiff

---

**6.** Plaintiffs' counsel agreed to limit its experts to the two who had been included in defendant's timely filed pretrial statement and to forgo the

deposition of defendant's expert in order to meet the trial date.

continued to refuse to cooperate in discovery); *Bank One,* 916 F.2d at 1079 (futility of lesser sanctions had been demonstrated). We believe the district court abused its discretion in immediately imposing a sanction that caused plaintiffs to lose their day in court.

To conclude, the district court found that defendant was prejudiced by plaintiffs' counsel's dilatory actions, and therefore, the preclusion of plaintiffs' expert testimony, leading to dismissal with prejudice, was warranted. We do not agree that this alleged prejudice, which is only one factor in the four-part *Regional Refuse* test, should outweigh the other three factors. The district court's order of January 24, 1995 did not mandate a definite and firm discovery cutoff date, but instead allowed the attorneys to waive by agreement. When the parties disagreed about whether waiver had occurred, the district court was inevitably brought into the dispute and decided to side with defendant in spite of the fact that plaintiffs were blameless and a letter in the record indicated that defendant had agreed to depose two of plaintiffs' expert witnesses on September 25, 1995, nearly a month after the discovery cutoff date. Given these circumstances, we find the district court abused its discretion in imposing the harsh sanction of preclusion of plaintiffs' expert witnesses, which, in effect, resulted in the dismissal of plaintiffs' case. The district court is reversed on this issue.

### IV.

 We also believe the district court abused its discretion in granting defendant's motion for a protective order, preventing the deposition of defendant's expert witness.

Although plaintiffs' counsel should have attempted to depose defendant's expert witness before August 31, 1995, defendant had contributed to a delay in the deposition of defendant, Dr. Amigo, which had to precede the deposition of defendant's expert, Dr. Schirmer. Also, defendant failed to file the required reports of Dr. Schirmer under Fed. R.Civ.P. 26(a)(2)(B). Before defendant's expert could be required to be deposed, these reports should have been filed. We do not believe defendant should be rewarded for a delay, which he in part caused. The district court is reversed on this issue.

### V.

To conclude, for the reasons stated herein, the district court's opinion and order of October 3, 1995 is **REVERSED,** and the case is **REMANDED** to the district court for proceedings consistent with this opinion.