**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0557n.06
Filed: September 11, 2008

No. 07-3338

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SCOTT PELTZ, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| RICHARD MORETTI, et al., | ) | |
| | ) | **O P I N I O N** |
| **Defendants;** | ) | |
| | ) | |
| GEORGE A. VINCE, JR.; BATES AND VINCE, | ) | |
| LLD; ALAN P. METZGER; ANDERSON | ) | |
| METZGER & COMPANY, PC, | ) | |
| | ) | |
| **Defendants-Appellants.** | ) | |

BEFORE: MARTIN and NORRIS, Circuit Judges, and STAMP, District Judge.[*]

**ALAN E. NORRIS, Circuit Judge.** This case stems from an ill-conceived effort to transfer assets to a new corporation in order to shield them from a money judgment. The principal shareholder of both corporations, Richard Moretti, has been found liable for the transfer, and has elected not to appeal. The district court also ruled that the accountant and lawyer for Moretti and his companies participated in a civil conspiracy with Moretti to fraudulently transfer the assets, and thus held them jointly and severally liable for the entire underlying judgment. It is this judgment that is before us on appeal.

---

[*]The Honorable Frederick P. Stamp, Jr., Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

A central issue in this case is that many of the facts supporting the finding of a civil conspiracy were established through plaintiff's motions for discovery sanctions filed pursuant to Fed. R. Civ. P 37(b)(2)(A). For the reasons that follow, we conclude that the sanctions imposed cannot stand, and because we cannot discern from the record whether the district court's decision can survive absent these Rule 37 "deemed" facts, we vacate the judgment and remand for further proceedings consistent with this opinion.

**I.**

Richard Moretti was the owner of Moretti Nursery, Inc., an Ohio corporation he purchased from his father. Scott Peltz obtained a judgment against Moretti Nursery, Inc. in the amount of $72,317.90, based on a claim that arose in a bankruptcy preference action. Peltz, as plan administrator, was authorized under a post-confirmation estate agreement to pursue claims of the debtor's estate.

In the midst of Peltz's collection efforts, Richard Moretti, allegedly on the advice of his accountant, Alan P. Metzger, and lawyer, George A. Vince, Jr., formed R & V Moretti, Inc. and transferred to it Moretti Nursury Inc.'s assets. In a deposition, Moretti admitted that the new corporation was formed for the very purpose of transferring the nursery assets in an attempt to continue operating his nursery business without paying the judgment amount to plaintiff.

In August 2006, the court granted Peltz's motion for partial summary judgment as to defendant Moretti and his companies on claims of breach of fiduciary duty, fraudulent transfer, and alter ego, rendering Moretti personally liable for the judgment along with his companies.

At the same time, in the pursuit of his civil conspiracy claim, Peltz successfully moved for an order compelling discovery from Metzger and Moretti, following their failure to respond to interrogatories and requests for the production of documents related to the transfer of assets. In October 2006, Peltz moved for Rule 37 sanctions against both the Moretti companies and Metzger, claiming they still had not provided the requested information as ordered by the court.

Moretti's request that the trial be continued was denied and a bench trial was held on November 8, 2006. None of the defendants attended the trial; according to the handwritten trial notes, the trial consisted mainly of Peltz reading portions of Moretti's deposition transcript. At the trial, the court directed both plaintiffs and defendants to file proposed findings of fact and conclusions of law. Following the trial, Peltz amended his motion for Rule 37 discovery sanctions against Moretti and Metzger, asking the court to establish several additional factual allegations.

A few weeks after the trial, Moretti finally sprang into action, filing his own summary judgment motion, a motion for reconsideration of the court's grant of partial summary judgment in favor of Peltz against Moretti, and a response to Peltz's amended motion for sanctions. Peltz filed a motion to strike Moretti's motion and memorandum in opposition to the previously granted partial summary judgment against him.

On January 3, 2007, the court issued its ruling, denying defendant's motion for reconsideration, striking defendants' memorandum in opposition to partial summary judgment, and granting plaintiff's amended motion for Rule 37 discovery sanctions against Metzger and

Moretti. The court ultimately made the following findings of fact and conclusions of law based

both upon the evidence at trial and its ruling on the motions for sanctions:

1. The United States District Court for the District of Delaware entered judgment in favor of Scott Peltz, as the Plan Administrator for the Consolidated Estate of Creditors, in the amount of $72,317.90, against Moretti Nursery, Inc.

2. Under Ohio law, civil conspiracy consists of a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.

3. A malicious combination of two or more persons to injure another in person or property as required to support a civil conspiracy claim under Ohio law is satisfied in this case.

4. Defendants Richard N. Moretti and Venetta A. Moretti consulted with George A. Vince, Jr., Bates & Vince, LLC, Alan P. Metzger, and Anderson Metzger & Company, PC, to fraudulently transfer the assets of Moretti Nursery, Inc., into R & V Moretti, Inc., a corporation formed for the purposes of avoiding the debt owed to Plaintiff.

5. George Vince, Jr., of Bates & Vince, LLC, in consultation with Richard N. Moretti, incorporated R & V Moretti, Inc. and facilitated the transfer of valuable assets from Moretti Nursery, Inc. to R & V Moretti, Inc., with knowledge that the debt to Plaintiff remained unsatisfied.

6. Alan P. Metzger, of Anderson Metzger & Company, PC, likewise facilitated the transfer of valuable assets from Moretti Nursery, Inc. to R & V Moretti, Inc., with knowledge that the debt to Plaintiff remained unsatisfied.

7. With the knowledge of Defendants, Moretti Nursery, Inc. transferred its valuable rights and assets to R & V Moretti, Inc., while insolvent, but still possessing significant assets and while the judgment in favor of Scott Peltz remained unsatisfied.

8. Richard N. Moretti and Venetta A. Moretti, as co-owners of R & V Moretti, Inc., received the fraudulently transferred assets of Moretti Nursery, Inc.

9.    The fraudulent transfers of property from Moretti Nursery, Inc. to R & V Moretti, Inc. are an unlawful independent acts for purposes of finding a civil conspiracy under Ohio law.

10.    Plaintiff has suffered injury and unjust loss as a result of Defendants' conduct.

11.    Defendants are jointly and severally liable to Plaintiff for $72,317.90 in compensatory damages.

12.    Punitive damages are not warranted in this case.

*Peltz v. Moretti*, 2007 WL 14687, at *4 (N.D. Ohio Jan. 3, 2007).

Defendants filed motions for reconsideration, additional findings of fact, to alter or amend judgment, and a motion for a new trial, all of which were denied.

## II.

"We review for clear error the district court's findings of fact and we review de novo the district court's conclusions of law." *Univ. Hosps. v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 433 (6th Cir. 2006) (citing *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 370 F.3d 542, 551 (6th Cir. 2004)). We review a district court's order granting discovery sanctions for an abuse of discretion. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir. 2002).

Federal Rule of Civil Procedure 37 governs when a party may move for an order compelling discovery, and the sanctions available to a court if a party defies such an order.[1]

---

[1] The text of Fed. R. Civ. P. 37 has been reworded and the subsections renumbered. The version in effect at the time of this case provides in relevant part:

**Rule 37. Failure to Make Disclosure or Cooperate in Discovery; Sanctions**

Rule 37(b)(2)(C) authorizes a court to go so far as to dismiss a complaint or render a default judgment against a disobedient party. In the instant case, the district court did not grant summary judgment, but rather deemed true certain facts alleged by the plaintiff pursuant to Rule 37(b)(2)(A). Courts have recognized, however, "that a court's decision to deem certain facts established may equate to a default judgment in some circumstances." *Chilcutt v. United States*, 4 F.3d 1313, 1320 (5th Cir. 1993); *see also Freeland v. Amigo*, 103 F.3d 1271, 1276 (6th Cir. 1997) (stating that a sanction precluding certain expert testimony was tantamount to dismissal of the case, and thus reviewing the sanction as one resulting in dismissal).

In our view, the sanctions levied establish the elements necessary to show Metzger and Vince participated in a civil conspiracy to fraudulently transfer assets, and thus we will review the sanctions as being equivalent to a grant of default judgment under Rule 37(b)(2)(C).

"The use of dismissal as a sanction for failing to comply with discovery has been upheld because it accomplishes the dual purpose of punishing the offending party and deterring similar

---

. . . .
  **(b) Failure to Comply With Order.**
. . . .
   **(2) Sanctions by Court in Which Action is Pending.** If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
   **(A)** An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
. . . .
   **(C)** An order . . . dismissing the action . . . or rendering a judgment by default against the disobedient party;

litigants from misconduct in the future." *Freeland*, 103 F.3d at 1277 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976)). However, "[d]ismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Reg'l Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 153-54 (6th Cir. 1988) (quoting *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 607 (6th Cir. 1985)). This court uses a four factor test when reviewing a decision by a district court to impose sanctions under Rule 37:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Freeland*, 103 F.3d at 1277 (citing *Reg'l Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d at 154-55).

**A. Discovery Sanction Facts Used Against Vince**

The discovery sanctions cannot stand as used against Vince. The record does not show that Vince was ever served with a discovery request, much less a court order compelling discovery. Discovery sanctions may be appropriate when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P 37(b)(2). "[T]he general rule [is] that one party to litigation will not be subjected to sanctions for failure to cooperate in discovery because of the failure of another to comply with discovery, absent a showing that the other party controlled the actions of the non-complying party." *Patton*, 765 F.2d at 606 (quotation omitted). There is

nothing in the record to suggest that Vince controlled the actions of other, non-complying parties. Without such a showing, the sanctions may not be used against a party who never defied a court order compelling discovery.

**B. Discovery Sanctions Used Against Metzger**

The discovery sanctions against Metzger present a closer call, as he was served with discovery requests, and ultimately defied a court order compelling discovery. Such recalcitrant conduct would undoubtedly support some form of discovery sanctions, but after analyzing the four factor test provided in *Freeland*, we conclude that the harsh sanctions granted by the district court, which effectively ended the case, constitute an abuse of discretion and cannot stand.

With respect to this first factor, this court "has held that absent a clear record of delay or contumacious conduct, an abuse of discretion occurs if the district court dismisses an action with prejudice." *Freeland*, 103 F.3d at 1277 (citing *Carter v. City of Memphis*, 636 F.2d 159, 161(6th Cir. 1980)).

Moretti and companies, and Metzger, failed to respond to discovery requests. The order compelling discovery from Moretti and Metzger was granted August 25, 2006, by a marginal entry order following a status conference. The stated deadline for defendants to provide discovery was August 31, 2006. Given that the defendants did not attend the status conference, or make an appearance at the November 9, 2006 bench trial, one must conclude that the conduct of Moretti and Metzger regarding discovery was contumacious, albeit for a relatively short period of time.

Turning to the second factor, prejudice to the adversary, *id.*, Peltz's own argument somewhat undercuts a finding of prejudice. Peltz earlier obtained summary judgment against

Moretti, which was not appealed. This judgment continues to provide him unfettered access to any assets fraudulently transferred between companies, assets he claims in his brief are "more that enough to pay the judgment" owed.

Regarding the key information to be discovered, Peltz already had access to the list of Moretti's assets, the amount of the loan against the underlying Moretti assets, and notice that the assets were encumbered (both actual notice from Moretti's deposition and tax return, and constructive notice from the public-record UCC filing statement). It would not have been difficult to determine the market value of the listed assets and thus determine the extent of any equity.

Even with respect to the civil conspiracy claim, the prejudice resulting from the delay in discovery was not severe. The cases that have found prejudice to the adversary often cite to many months of costly delays, whereas this delay was a matter of weeks.

"[T]he third factor is whether the party was warned that failure to cooperate could lead to the sanction . . . ." *Id.* The district court in this case never explicitly warned the parties about the possibility and severity of sanctions. Moretti and Metzger were served with Peltz's motion for sanctions on October 3, 2006, to which they objected on October 13, 2006. Of course they were on notice that such sanctions could be granted. Peltz filed an amended motion for sanctions after the bench trial, on November 17, 2006, to which defendants objected on November 28, 2006.

Clear notice is required, and this court has previously held that "routine language in a standard order, warning counsel of possible dismissal as a sanction for failure to comply . . . is not necessarily sufficient prior notice to immediately warrant the extreme sanction of dismissal."

*Freeland*, 103 F.3d at 1279 (citing *Vinci v. Consol. Rail Corp.*, 927 F.2d 287, 288 (6th Cir. 1991)). This case is unusual in that the motions for discovery sanctions came only one month before, and more than one week after, the trial. The motions provided notice as to the facts Peltz sought to have the court deem true, but it does not seem that the motions for sanctions should constitute *prior* notice in this case, because by then the parties did not appear to have sufficient time to comply with discovery requests and prevent the grant of sanctions.

If all the above factors make for a close call, the fourth factor is fatal. The fourth factor "is whether less drastic sanctions were first imposed or considered" before the harsh sanction of dismissal or default is imposed. *Id.* at 1277. This court has stated that "the sanction of dismissal is appropriate only if . . . *no alternative sanction* would protect the integrity of the pretrial process." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 594 (6th Cir. 2001) (quoting *Carter*, 636 F.2d at 161). There is nothing on the record to indicate that any lesser sanction, such as financial penalties, perhaps designed to compensate for plaintiff's increased discovery costs, were considered or imposed.

For these reasons, then, the sanctions against Metzger must be set aside.

**III.**

Having dispensed with the sanctions, we must determine if the civil conspiracy judgment can otherwise stand without reliance on deemed facts. "The tort of civil conspiracy is 'a malicious combination of two or more persons to injure another in property, in a way not competent for one alone, resulting in actual damages.'" *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866

(Ohio 1995)). "Thus, in order to establish a claim of civil conspiracy, the following elements must be proven: '(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.'" *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 534 (6th Cir. 2000) (quoting *Universal Coach, Inc. v. N.Y. City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)).

One element seems particularly difficult to establish in this case. Pivotal to finding a civil conspiracy is the damage caused by the conspiracy, not simply the conspiracy itself. *See Gosden v. Louis*, 687 N.E.2d 481, 497 (Ohio Ct. App. 1996) ("The damage is the gist of the action, not the conspiracy . . . ."). The requirement that the conspiracy cause actual damages "means that, if a plaintiff suffers no actual damages from the underlying unlawful act, there can be no successful civil conspiracy action." *Id.* (citing *Minarik v. Nagy*, 193 N.E.2d 280, 281 (Ohio Ct. App. 1963)).[2]

The district court order states that the findings of fact and conclusions of law are based on both the facts deemed true by sanction and the evidence presented at trial. Without the facts

---

[2] There is Ohio case law holding that "there must be actual damages attributable to the conspiracy *in addition to* those damages caused by the underlying tort in order for the plaintiff to recover from the conspiracy." *Stiles v. Chrysler Motors Corp.*, 624 N.E.2d 238, 244 (Ohio Ct. App. 1993) (citing *Minarik*, 193 N.E.2d at 280-82) (emphasis added). *See also Crosby v. Beam*, 615 N.E.2d 294, 304 (Ohio Ct. App. 1992). The court in *Gosden* stated that these cases misread *Minarik*. *Gosden*, 687 N.E.2d at 497. Neither the Supreme Court of Ohio, nor this court, has directly addressed the issue. The district court for the northern district of Ohio confronted the issue, and concluded that, in its opinion, "the Ohio Supreme Court would adopt the holding of *Gosden* if the question was before it, for the reasons stated in that opinion." *Zeigler v. Findlay Indus., Inc.*, 380 F. Supp. 2d 909, 914 (N.D. Ohio 2005). We agree.

established by sanction, we are unable to discern from the record which, if any, elements of the

alleged civil conspiracy might be established solely from the evidence presented at trial.

If the district court finds facts from the trial alone that it deems sufficient to establish a

civil conspiracy, a more detailed finding of facts is required. Furthermore, any assessment of

damages must be accompanied by supporting findings of fact. The record reflects that some, if

not all, of the assets were encumbered. To the extent the assets were already encumbered, they

were not available to satisfy Peltz's judgment. A transfer of these assets may have been unethical,

but under Ohio law cannot constitute a fraudulent transfer.[3]

**IV.**

We conclude that granting discovery sanctions which effectively ended the case was an

abuse of discretion. The order of the district court is **VACATED** and this cause is **REMANDED**

for the purpose of determining if the facts established at trial are sufficient to support the

judgment and, if so, a determination of damages.

---

[3] The Ohio Revised Code excludes from assets "[p]roperty to the extent it is encumbered by a valid lien." Ohio Rev. Code Ann. § 1336.01(B)(1). Thus, encumbered assets cannot be the subject of a fraudulent transfer. *See Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.*, 622 N.E.2d 1113, 1119 (Ohio Ct. App. 1993); *see also* 24 O Jur 3d, Creditors' Rights and Remedies § 600 (1998).